IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 06-60084-V2-13 |
| SYLVIA C. SOLIS | § | |

**MEMORANDUM OPINION**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**CONCERNING CHAPTER 13 CRAMDOWN OF AUTOMOBILE LENDER**

In this chapter 13 bankruptcy case, Sylvia Solis ("Debtor") has proposed a debt repayment plan that would satisfy liens on two motor vehicles by paying the value of the vehicles rather than paying the full principal due, *i.e.* "cramdown" of the vehicle lender. After hearing, the Court concludes that Debtor's chapter 13 plan fails to meet statutory plan confirmation requirements (i) as to one vehicle because it is a "910 Vehicle"[1] and (ii) as to the other vehicle because the plan was not filed in good faith and does not comply with all requirements of Title 11. However, the Court also concludes that Debtor correctly chose the bankruptcy petition date, rather than the plan confirmation date, as the date for determining the interest rate applicable to payment of 910 Vehicle claims. By separate order issued this date, the Court denies confirmation of Debtor's chapter 13 plan and sets deadlines for filing an amended plan.

## I. FACTS

Sylvia Solis ("Debtor") filed a petition commencing this case under chapter 13 of the Bankruptcy Code on June 16, 2006. Although Debtor is married, Debtor's husband is not a joint debtor in this case. Some of the following facts were stipulated[2] and other facts are found from Debtor's testimony.

Debtor's chapter 13 plan would, among other things, satisfy liens on two vehicles: a Dodge Ram that is the family vehicle and is used in Mr. Solis' business, and a Dodge Neon that is used exclusively by Debtor's adult son and his family. The plan would satisfy the liens by payment of about $12,000 less than the balance due on the Dodge Ram and by payment of about $4,000 less than the balance due on the Neon. The chapter 13 plan also proposes to pay less than 100% of unsecured claims.

### A. The 2004 Dodge Ram

Debtor and her husband Raymond Solis signed a contract for the purchase of a 2004 Dodge Ram on or about October 30, 2004, which is less than 910 days prior to the date that

---

[1] "910 Vehicle" is defined *infra*. In general, it is a vehicle that was acquired within 910 days prior to the filing of the bankruptcy case for the personal use of the debtor. Payment of debt secured by 910 Vehicles is more onerous to debtors than payment of secured debt on other vehicles.
[2] Docket # 33.

Page 1

Debtor filed her bankruptcy case. Daimler Chrysler Financial Services Americas L.L.C. ("Daimler Chrysler") has a purchase money security interest in the Dodge Ram. The balance due on the retail installment contract is $30,090.37. Debtor's Chapter 13 Plan alleges that the replacement value of the Ram is $17,800.00 and Debtor proposes to pay that amount to Daimler Chrysler in full satisfaction of its secured claim against the Ram.

Debtor's pleadings assert that the Dodge Ram is used by her husband for his purposes, including pulling a trailer that Mr. Solis uses to earn income performing as a disc jockey at private parties.[3] Debtor does not dispute that, when purchased, the vehicle was expected to be (and now is) the only vehicle available to her and to her husband for transportation. Debtor alleged that the vehicle is not a 910 Vehicle because a different kind of vehicle would have been purchased if her husband had not needed a truck to pull the trailer. But Debtor testified that her husband's business did not begin until long after the Dodge Ram was purchased.[4] Although the full extent of Debtor's intended use of the Dodge Ram was not established at the hearing, the Court finds that Debtor's intended personal use of the vehicle was significant and material. She testified that she uses the vehicle, among other things, to go to and from work.[5] From Debtor's testimony, the Court finds that the Dodge Ram was not purchased for Debtor's husband's sole use but rather that it was purchased in significant and material part for Debtor's personal use, including her transportation to and from work and including family and household use.

## B. The 2004 Dodge Neon

Debtor signed a Retail Installment Contract for the purchase of a 2004 Dodge Neon on or about October 23, 2004, which is less than 910 days prior to the date that Debtor filed her bankruptcy case. Daimler Chrysler holds a claim secured by a purchase money security interest in the Neon. The balance due on the retail installment contract is $14,518.66. Debtor's Chapter 13 Plan values the Neon at $10,400.00 and proposes to pay that amount to Daimler Chrysler in full satisfaction of its secured claim against the Neon.[6]

Debtor testified that the vehicle was purchased for the exclusive use of her adult son and his family and that the vehicle is used exclusively by her son. There was no contrary evidence, and therefore the Court finds that the Neon was not acquired for Debtor's personal use. There is no evidence that Debtor's son was living with Debtor, that Debtor has any legal obligation to

---

[3] There is some confusion about Mr. Solis's business. The pleadings state that the Dodge Ram pulls a trailer for Mr. Solis's band to perform in parades. Mrs. Solis testified that Mr. Solis is a disc jockey who performs at parties for compensation. The point is not critical to this decision.

[4] The Ram was purchased 10/30/04; Debtor testified that the DJ business began after the bankruptcy filing which was 06/16/06: Digital recording of hearing at 1:30:32.

[5] When asked, on direct examination, the purpose for which the Dodge Ram was purchased, Debtor stated "It was for personal use and then for his [husband's] DJ business." When asked to clarify, "personal use", Debtor stated "Well, I get to work on it. Use it for work." Digital recording of hearing at 1:28:30. The retail installment contract that Debtor signed (Exhibit D to the stipulated facts, docket # 33) stated that Debtor agreed " ... to use this vehicle primarily for personal, family, or household purposes." A space was provided for Debtor to indicate to the contrary, *i.e.* that the vehicle would primarily be used for business or commercial purposes. Debtor did not check the box to indicate that the vehicle would be used primarily for business or commercial purposes. Daimler Chrysler contends that Debtor is prevented by the statute of frauds from alleging to the contrary. Since the Court finds from Debtor's testimony that the vehicle is used only in part for business purposes and in other part for her transportation to work and other family uses, the Court need not address that issue.

[6] Daimler Chrysler does not contest the alleged current market value of the Neon.

support her son or to provide him with a vehicle, that the son is disabled or otherwise dependent on Debtor, or that providing a vehicle for her son is necessary (or even helpful) to an effective reorganization.

Debtor's interest in the Neon is solely that of purchaser and title holder, for the benefit of her son. Debtor's son pays her $320 per month for the vehicle. Debtor testified that $320 per month was the monthly payment under the original retail installment contract, but that if the secured claim can be reduced in her chapter 13 plan, then the monthly payment to Daimler Chrysler (which her plan proposes) will be $300 per month, leaving Debtor with $20 per month of additional income.[7] There was no testimony or allegation that there was any written contract or other formalized agreement between Debtor and her son relating to the vehicle. It was clear from the testimony that Debtor did not assert any beneficial interest in the vehicle or right to use it; she viewed her son as having all beneficial interests of ownership. There was no evidence of Debtor's son's financial condition or of his ability to make payments of $320 per month to Debtor, although Debtor testified that her son had made payments in that amount prior to the bankruptcy case.

### C. The Interest Rate

Debtor's chapter 13 plan proposes to pay interest to Daimler Chrysler at a rate equal to the prime rate that was in effect on the date that the case was filed plus an additional percentage required for additional risk.

## II. ISSUES

Daimler Chrysler objected to confirmation of Debtor's chapter 13 plan, alleging that both vehicles were 910 Vehicles and therefore, Daimler Chrysler argued, Debtor's plan must propose to pay Daimler Chrysler the present value of the principal due on both claims. Debtor responded that neither vehicle was a 910 Vehicle because neither was for Debtor's use. In its pretrial memorandum of authorities, Daimler Chrysler continues to assert that the Dodge Ram is a 910 Vehicle but withdraws that argument with respect to the Dodge Neon if the Court finds that the Neon was purchased exclusively for Debtor's son's use (which the Court does).[8] In that event, Daimler Chrysler concedes that the Neon is not a 910 Vehicle but contends, in the alternative, that the Court must grant relief from the automatic stay to allow Daimler Chrysler to foreclose on the Neon.[9] Thus the legal issue presented as to the Dodge Ram is a BAPCPA[10] issue and the issue presented with respect to the Neon is a pre-BAPCPA issue.

---

[7] The $20 surplus would approximately cover the administrative expenses of the chapter 13 plan with respect to the $300 payment for the Neon. (*i.e.* the trustee's commission would be about 7% of $300, or about $21.) There would be little or nothing left for Debtor or for her creditors.

[8] In its memorandum of authorities, docket # 31, Daimler Chrysler states: "DaimlerChrysler does not dispute that if the vehicle was purchased for the exclusive use of the son, then the 910-day provision of §1325 does not apply. However, if that is the case, then DaimlerChrysler will seek relief from the automatic stay for the exact reasons set forth in *In re Lewis.*"

[9] Daimler Chrysler also makes another alternative argument relating to the Neon, which is a very sophisticated financial argument. Daimler Chrysler argues that if the Neon can be crammed down, then Debtor must pay to Daimler Chrysler the present value of the vehicle. Daimler Chrysler further argues that if the Debtor is receiving income from her son for this vehicle, then the present value of the vehicle cannot be less than the present value of the stream of payments due from Debtor's son. Finally, Daimler Chrysler argues that since Debtor is receiving $320 per month from her son, but only paying Daimler Chrysler $300 per month, the present value paid to Daimler

The third issue is whether Debtor's plan satisfies the statutory requirements for confirmation if it proposes to pay interest to Daimler Chrysler at a rate equal to 1% above the prime rate on the date that the case was filed. Daimler Chrysler argues that the interest rate is to be determined as of the date that the plan is confirmed, not the date that the case was filed. Both parties have accepted 1% above the prime rate as the applicable rate; they simply differ on when the prime rate is determined for this calculation.

# III. CONCLUSIONS OF LAW

## A. Cramdown of the Dodge Ram claim

### 1. Statute

Prior to October 16, 2005, a debtor in chapter 13 could bifurcate any claim secured by the debtor's automobile by treating the claim as secured up to the value of the vehicle and treating the remainder of the claim as unsecured. The Court was obliged to confirm the plan if it paid the lender the present value of the secured portion of the claim and if it paid the unsecured portion in the same manner as other unsecured creditors were paid. *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

Effective October 16, 2006, BAPCPA amended § 1325 of the Bankruptcy Code by adding the following language (which has generally been referred to as the "hanging paragraph" since it was not given an appropriate subparagraph designation):

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor...

This opinion refers to vehicles and claims covered by this provision as 910 Vehicles and 910 Vehicle Claims.

As to the Dodge Ram, the dispute between the parties is whether the vehicle was "acquired for the personal use of the debtor."[11] The statute does not define "personal use" and

---

Chrysler must be less than the present value of the vehicle. This argument is entirely logical and appears to be a correct financial and legal analysis. The Court does not address it principally because it requires a number of assumptions and calculations that would make this decision even more lengthy and ponderous than it already is, and because lengthy discussion of that issue is unnecessary since the case is decided on other bases.

[10] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) (codified as amended at 11 U.S.C. §§ 101-1532). BAPCPA amended the Bankruptcy Code to add the hanging paragraph to § 1325(a).

[11] Neither Daimler Chrysler nor Debtor has taken the position advanced by *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006) which holds that § 506 simply does not apply to 910 Vehicle Claims and therefore the claims are not secured claim for purposes of § 1325. While that opinion applies technically correct legal principles, it is

there is no logic that the Court can find or legislative history that gives any guidance on how to interpret the statutory language. Several courts have addressed the question.

## 2. Jurisprudence regarding "personal use of the debtor"

### a) 'Personal use of the debtor" does not include exclusive use by a non-debtor who is not a spouse

*In re Lewis*, 347 B.R. 769 (Bankr. D. Kan. 2006), holds that the language "a motor vehicle... acquired for the personal use of the debtor... cannot reasonably be stretched to include a vehicle acquired for the use of an independent adult child who does not live with the debtor."[12]

### b) "Personal use of the debtor" does not include property used exclusively for business purposes

*In re Lowder*, 2006 WL 1794737 (Bankr. D. Kan. 2006), involved a debtor who used her car for travel to and from her place of employment, for personal shopping, and to run errands.[13] To interpret the phrase "personal use" Judge Karlin looked to Fourth Circuit jurisprudence[14] that interpreted whether medical equipment owned by a doctor was "personal" property. The Fourth Circuit had held that "property used for business purposes or with a profit motive is not 'property intended primarily for personal... use' within the meaning of § 722."[15] Judge Karlin concluded

---

unpersuasive because (i) it interprets statutory language in a way that reaches absurd results (does anyone really believe that Congress intended in BAPCPA to deny vehicle lenders their previous rights as secured lenders), and (ii) the absurd result paints the court into a box that it can resolve only by stretching § 1111(b) far beyond any reasonable limits. While there is no good answer to the statutory defects identified by *Carver*, there are more reasonable ways to approach the problem. The analysis of *In re DeSardi*, 340 B.R. 790, 812 (Bankr. S.D.T.X. 2006), is much more persuasive: "Taking 910 claims out of the purview of § 506 does not mean 910 claims are a new and unique class of claims. Furthermore, the Court will not support a judicially crafted treatment of claims with no basis in the Code. The Court finds it unlikely that Congress would create a new, undefined type of claim, and then furnish no guidance as to how such a claim should be handled. Rather, this Court turns to basic principles of Code interpretation and finds that a 910-paragraph claim is an allowed secured claim and may be treated under § 1325(a)(5). Section 1325(a)(5) applies to 'allowed secured claims.' Secured claims are generally defined by § 506. Section 506 does not apply to 910-paragraph claims. However, certain statutory interpretive guidelines are well established..." Or, one might take the approach of *In re White*, 2006 WL 2827321 (Bankr. E.D. La. 2006) that the effect of the hanging paragraph is to eliminate the cramdown provision effected by § 506 but allows the claim to retain its status as a secured claim; the creditor is simply not entitled to post-petition interest or other charges due under the contract, regardless of equity, although the creditor is still entitled to an appropriate rate of interest to protect the present value of the claim. As noted, neither Daimler Chrysler nor Debtor raised this issue, and the Court is eternally grateful.

[12] 347 B.R. at 773. However, as discussed in much more detail below, the *Lewis* court also held that the debtor's chapter 13 plan could not be confirmed because preferential treatment of the loan on the daughter's car violated the requirement that the plan be filed in good faith.

[13] "The Debtor uses her car, in part, to travel to and from her place of employment, which is located approximately 20 miles from her residence. There is no public transportation readily available to her work site, and, without her car, Debtor would be unable to get to work. Her employer does not require her to have a car as part of her employment, and she does not use it within the scope of her employment. Likewise, she does not use the car in any other business, occupation or profession. Further, her employer does not contribute to the payment of, or pay for, car or insurance payments, gasoline, maintenance costs or for repairs. While Debtor uses her car to travel to and from work, she also uses it to do personal shopping and run personal errands. All of these uses were contemplated when Debtor 'acquired' the Camry." *In re Lowder*, 2006 WL 1794737, *1 (Bankr. D. Kan. 2006).

[14] *Cypher Chiropractic Center v. Runski (In re Runski)*, 102 F.3d 744 (4th Cir. 1996).

[15] *In re Lowder*, 2006 WL 1794737, *3 (citing *In re Runski*, 102 F.3d at 747).

that property used entirely for business use was not "personal" property but that "[m]erely acquiring a vehicle for her own use, with one of the uses contemplated being to drive to and from work, is not for 'business' purposes; it is for personal use."[16] Judge Karlin reached no conclusion with respect to a vehicle that was acquired for both business and for personal use.

### c) Jurisprudence is split concerning whether "family and household" use is "personal use of the debtor"

*In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006), in essence concluded that a vehicle is for the "use of" the person who is the primary driver. The decision holds that since the vehicle in question was purchased exclusively for the debtor's wife's use, it was not a 910 Vehicle. Debtor's wife was not a joint petitioner in the bankruptcy case. The court concluded that "occasional" use of the vehicle by the debtor did not satisfy the "personal use of the debtor" test. The court further concluded that debtor's statement in the retail sales agreement that the vehicle was purchased for "personal, family, or household use" was unavailing to the creditor. The Court concluded that since Congress used the phrase "personal, family, or household use" in other parts of the statute but only used "personal use" in § 1325, Congress must have intended to exclude family or household use in the § 1325 test. *See also, In re Smith*, Case No. 05-16055 (Bankr. M.D. Tenn. 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006).

After deciding *Lowder, supra.* Judge Karlin returned to the "hanging paragraph/personal use" issue in *In re Bolze*, 2006 Bankr. LEXIS 2027 (Bankr. D. Kan. 2006). The vehicle in *Bolze* "was specifically acquired for the purpose of transporting the entire family in one car when the Debtors' fourth child was born."[17] Like the debtor in *Jackson*, the Bolze's argued that since Congress used the phrase "personal, family, or household use" in other parts of the Bankruptcy Code but used only "personal use" in the "hanging paragraph" Congress must have intended to exclude from the effect of § 1325 a vehicle that was used for family or household use. The Bolze's argued that a vehicle was for personal use only if it was <u>not for</u> business, family, or household use, such as a vintage car driven only occasionally in a 4th of July parade or some similar activity. The court rejected that argument. First, Judge Karlin referred to *Lowder* and *Runski* for the proposition that "personal use" is all use other than "business" use, and that family or household use was not inconsistent with "personal use." Citing the Fourth Circuit in *Runski*, Judge Karlin holds that the three terms are overlapping concepts. Second, Judge Karlin held that even if the terms ("personal", "family", and "household") were not overlapping, they nevertheless were not mutually exclusive; a vehicle could be purchased for both personal and family purposes.[18] Since the statute does not require that the vehicle be "solely" or "principally" for a debtor's personal use, Judge Karlin concluded that a material amount of personal use is sufficient to satisfy the test to classify the vehicle as a 910 Vehicle.[19] *Bolze* holds that if the purpose of acquiring the vehicle was in material part for personal use, including driving the

---

[16] *In re Lowder*, 2006 WL 1794737, *4 (Bankr. D. Kan. 2006).
[17] *In re Bolze*, 2006 Bankr. LEXIS 2027, *2 (Bankr. D. Kan. 2006).
[18] In *Runski* the Fourth Circuit gives the example of a television set that might sometimes be for a debtor's personal use but might also, at other times, be for family use.
[19] "Nothing in the hanging paragraph requires the personal use to be the exclusive use of the property, or indicates that the paragraph is inapplicable if the automobile has more than one use." *In re Bolze*, 2006 Bankr. LEXIS 2027, *14.

Page 6

vehicle to and from work, then the vehicle was for debtor's "personal use."[20] However, Judge Karlin was still not required to decide whether a vehicle used for both business and personal use could be a 910 Vehicle.

### d) The jurisprudence is split on whether "debtor" in the hanging paragraph means the obligor on the note or the person(s) who filed the bankruptcy petition

*In re Press*, 2006 WL 2734335 (Bankr. S.D. Fla. 2006) holds that if one spouse purchases a car with the intention that it will be for the use of the non-liable spouse, the vehicle is not for the "personal use" of the "debtor" regardless of how much the spouses may share the use of the car, regardless of whether the vehicle is used for family or household use, even if the vehicle is the sole vehicle for the family, and even if the "using" spouse is a joint debtor in the bankruptcy case. This case holds that "debtor" (in the phrase "personal use of the debtor") refers to the person who signed the retail vehicle purchase agreement, not the person(s) who signed the bankruptcy petition. The case also agrees with *Jackson* that Congress intended to exclude vehicles that were used for family or household purposes from the "hanging paragraph".

*In re Vagi*, 2006 WL 2771962 (Bankr. N.D. Ohio 2006), reaches a contrary conclusion. Mrs. Vagi had not signed the retail purchase agreement but she had signed and had filed the bankruptcy petition with her husband instituting a joint bankruptcy case. Judge Woods held that "use of the debtor" should be read "use of the debtors" under these circumstances

### e) Totality of the Circumstances

*In re Hill*, 2006 WL 2819603 (Bankr. W.D. La. 2006), holds that the bankruptcy court must look to the "totality of the circumstances." The court held that statute required the court to look at the intent of the purchaser at the date of acquisition, not the bankruptcy petition (or any subsequent) date. But *Hill* also adopts a *per se* test. The court held that if the acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit, then it was not acquired for debtor's personal use. Notwithstanding its reference to all the facts and circumstances, *Hill* would seem to require that a court first determine whether the vehicle enables the debtor to make a significant contribution to the gross income of the family unit; *Hill* would look at all the facts and circumstances only if the answer to the first question was "no".

Without specifically naming its approach, *In re Vagi*, 2006 WL 2771962 (Bankr. N.D. Ohio 2006), held that the vehicle was purchased "for the personal use of the debtor" under the following circumstances: Mr. Vagi purchased the vehicle exclusively for Mrs. Vagi to transport the couple's three children to school and other activities, to run errands, and to shop. Mr. Vagi tries to drive the vehicle as little as possible because his work requires extensive driving. The *Vagi* court held that these conceded facts constituted a concession that the vehicle was for Mrs. Vagi's personal use, either expressly or impliedly rejecting the notion that "personal" excludes any vehicle that is used for "family or household" use.

---

[20] Although not discussed in detail, the *Bolze* court at least impliedly held that it does not matter that Mrs. Bolze, the common law wife and joint bankruptcy petitioner with Mr. Bolze, did not sign the retail purchase agreement. Other courts have found to the contrary, as set out below.

### 3. Conclusions

The extended discussions in these conflicting decisions demonstrate how confusing the statutory language is, how little guidance there is to help the courts establish a test, and how much the courts have struggled to achieve reasonable interpretation. Since the Court cannot simply abandon the task as impossible, the Court reaches the following conclusions as most likely (at least in this Court's judgment) to be what Congress intended. The words to be interpreted are

"acquired for the personal use of the debtor"

Courts should not strain to interpret the hanging paragraph in a way that would effectively emasculate the amendment.

1) "Acquired for"— The statutory language clearly points to the intention of the acquirer at the date of acquisition. The Court has found no jurisprudence that explicitly rejects the notion that the Court should determine the intention of the parties at the time that the vehicle was acquired, not any later date. Although the jurisprudence sometimes discusses how the vehicle "is used" rather than discussing the "purpose for which it was acquired", the loose language in many cases can be attributed to lax evidentiary presentations, to the fact that in most cases there is probably no difference between intended use and subsequent actual use, and to the fact that the courts are judging credibility of testimony about "intended use" by observing "actual use." Therefore, the Court concludes that the appropriate test is the intention of the purchaser at the time that the vehicle was acquired.

2) "Exclusive use by a non-debtor"—The Court agrees with *Lewis* that if the vehicle was acquired for the exclusive use of a person other than the debtor, then the hanging paragraph does not apply. However, the Court also agrees with *Vagi* that if the "other person" is debtor's spouse, then the question is more problematic since use by debtor's spouse may use the vehicle for the benefit of the debtor, debtor's family, and debtor's household. This latter use might, depending on all the facts and circumstances, be "use of" the debtor.

3) "Percentage of Debtor Use"—The Court agrees with *Bolze* that the hanging paragraph does not use the words "solely", "exclusively", "mostly", "primarily", "partially" or any other bright line (or even hazy, gray line). There is no authority in the statute to determine that a vehicle is not a 910 Vehicle because the purchaser intended someone else to use it part of the time. Having no guidance from the statute, the Court will adopt its best estimate of a reasonable conclusion. The Court will determine that the "personal use" requirement of the statute is satisfied if the acquirer intended a debtor's personal use to be significant and material.

4) "Percentage of Non-Business Use"—The Court agrees with the almost universal conclusion that "personal" implies "non-business". Therefore the Court would agree with *Lowder*'s interpretation of *Runski*: that a vehicle acquired exclusively for business use is not a vehicle acquired for personal use. But, just as there is no bright or gray line for the Court to use when comparing proportionate use by a debtor and use by a nondebtor, there is no

       guidance in the statute concerning what percentage of business use (less than 100%) would disqualify the vehicle as a 910 Vehicle. The words "solely", "exclusively", "mostly", "primarily", "partially" or any other type of quantitative requirement do not appear in the hanging paragraph in this context, either. Having no guidance from the statute, the Court will adopt its best estimate of a reasonable conclusion. The Court will determine that the "personal use" requirement of the statute is satisfied if the personal use of the debtor is significant and material, regardless of whether there is also some business use.

5) What does "personal" mean?—"Personal" use and "family or household" use are not different or mutually exclusive.[21] The chapter 13 debtor is always a person,[22] and when the debtor has a family it would be virtually impossible to distinguish "family" use from "personal" use.[23] And, even if "personal" "family" and "household" were mutually exclusive as to any one event or activity, the same vehicle could provide "family or household" benefits on some trips and could provide "personal" benefits on other trips. Therefore, the Court concludes that "personal use" includes any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations.[24] The Court concludes that "personal use" includes transportation to and from work in almost all circumstances since there is almost always an alternative such as walking, bicycling, public transportation, carpooling, obtaining housing closer to the workplace, *etc.* In circumstances in which there is an alternative, the decision to use an automobile is a personal use: to make the trip faster, more pleasant, and more convenient. But if there is truly no alternative, the Court would not conclude that the use of a vehicle to go to and from work was "personal use" of the vehicle. This Court will consider all of the facts and circumstances to determine whether the vehicle was acquired with the intent of providing personal benefits for the debtor(s).[25]

6) "Use" of a vehicle is not limited to driving it—some courts seem to test "use" by determining which person is doing the driving. Although identifying the

---

[21] *See* the Fourth Circuit's example of the television set in *Runski* at footnote 18 *supra*.

[22] Bankruptcy Code § 109(e).

[23] For example, how could one ever analyze whether a trip to the grocery store for a family of 4 was a "family" use or a "personal" use; would bankruptcy judges start inquiring into whether the percentage of food that was purchased for debtor(s) was greater than the percentage that was purchased for others? And if the courts did make that inquiry, what would the percentage test be? More important, can anyone really say that taking a child to school or to a soccer game is not a personal benefit to the parent? Would bankruptcy judges be required to start taking testimony about how much personal pleasure debtors got from such activities? Other usage of the vehicle (trips to the doctor?) may satisfy legal support and parental obligations. Is satisfaction of a "person's" legal obligations a "personal" use?

[24] One might imagine that acquisition of a vehicle would benefit a debtor even without transportation being involved.

[25] The Court disagrees with the conclusion of the *Hill* court that if the vehicle significantly contributes to production of income, it cannot be for "personal" use; that conclusion implies (i) that travel to and from work is not personal use, and (ii) that if a vehicle satisfies one purpose (providing income) it cannot also satisfy another (satisfaction of personal needs). There is simply no authority in logic or in the statute for that conclusion.

person "who is driving" the vehicle will often identify the person "who is using" the vehicle, that is not necessarily the case. The language of the statute is "personal use <u>of</u> the debtor" (emphasis added), not "personal use <u>by</u> the debtor". There are many ways to "use" a vehicle. For example, a disabled person could acquire a vehicle for personal transportation, and could hire a driver to do the actual driving; the Court would conclude that the vehicle is for the acquirer's use, even though the acquirer never physically manipulates the controls. A husband who drives a vehicle to run an errand for his wife would be using the vehicle for the wife. This Court will test "use" by testing "for whose benefit" the vehicle was intended to be used, not solely by considering who was intended to manipulate the controls.
7) The term "debtor" means the person(s) who filed the bankruptcy case, not the person(s) who signed the retail purchase agreement. That is the way it is defined in the statute,[26] and in virtually all discussion about chapter 13. The Court sees no logic in adopting a different definition for the hanging paragraph.
8) Finally, with respect to whether the hanging paragraph created a new class of claims in chapter 13 cases, as indicated in footnote 11 *supra*, the Court agrees with *DeSardi*, and *White*, not *Carver*.

In summary,[27] the "hanging paragraph" of § 1325 applies to a vehicle claim if: (1) the claim is secured by a purchase money security interest, (2) the debt was incurred within 910 days prior to the filing of the bankruptcy case, (3) the collateral is a motor vehicle, and (4) at the time of the acquisition the acquirer intended that a significant, material portion of the use of the vehicle would be (a) for the benefit of the debtor(s) in the bankruptcy case, (b) for non-business purposes, and (c) for satisfaction of debtor(s)' wants, needs, or obligations. In reaching conclusions as to what is significant and material, the Court must take into consideration all of the facts and circumstances of the case.

## 4. The Test applied to the Totality of the Circumstances in this case

Daimler Chrysler holds a purchase money security interest claim secured by Debtor's Dodge Ram. The debt was incurred within 910 days prior to the date that the bankruptcy petition was filed. The Dodge Ram is a motor vehicle. The vehicle was acquired to transport Mrs. Solis to and from work and it was purchased for all the myriad of uses that a typical American husband and wife make of their sole vehicle. Those uses are "personal" uses. Mrs. Solis is a "debtor." Although it was anticipated that Mr. Solis would also use the vehicle, the purchasers also anticipated Mrs. Solis' use of the vehicle would be significant and material.

---

[26] Bankruptcy Code § 101(13).
[27] This summary is not intended to address the last phrase of the hanging paragraph which states: "... or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1 year period preceding that [the bankruptcy] filing."

Page 10

Therefore the Dodge Ram is a 910 Vehicle, and because the plan proposes to pay less than the present value of the principal due on the claim, confirmation of Debtor's plan is denied.

### B. Cramdown of the Neon debt

There is no stipulation or evidence that Debtor has any equitable interest in the Neon or any right to use the Neon. Debtor emphatically denied that the Neon is hers and denies that she uses the Neon. The Court concludes that Debtor purchased the Neon and holds title to it solely as an accommodation for her son.[28] As noted above, Daimler Chrysler concedes that "if the vehicle was purchased for the exclusive use of the son, then the 910-day provision of §1325 does not apply."[29]

Citing *In re Lewis*, 347 B.R. 769 (Bankr. D. Kan. 2006), Daimler Chrysler contends, however, that it is entitled to relief from the automatic stay to foreclose on the vehicle because the plan proposes to cram down its purchase money security interest. But, the conclusion in *Lewis* is not quite that simple.

Bankruptcy Code § 362(d) requires the bankruptcy court to grant relief from the automatic stay (i) for "cause" including lack of adequate protection and (ii) if the debtor does not have "an equity" in the property and the property is not necessary for an effective reorganization. It is clear in this case that Debtor does not have "an equity" in the property and that it is not necessary for an effective reorganization. However, that does not automatically give Daimler Chrysler the right to foreclose. The statute merely provides that the Court must grant relief, and the statute states that the relief may take one of several forms, including "terminating, annulling, modifying, or conditioning ..." the stay.[30] Therefore, if it were permissible for Debtor to "cram down" Daimler Chrysler's lien, then instead of terminating the stay, the Court might continue the stay in effect on condition that the Debtor provide adequate protection.

The *Lewis* court found that the plan was not filed in good faith because Mrs. Lewis was paying for her daughter's car with money that could have been used to pay unsecured creditors. Therefore the *Lewis* court held that the plan could not be confirmed and that the debtor could not provide adequate protection. It was on those findings and conclusions that the *Lewis* court granted relief from the stay.

The analysis returns, then, to whether Debtor can confirm a chapter 13 plan that provides for cramdown of Daimler Chrysler's lien on the Neon. And for the following reasons, the Court concludes that the Debtor cannot.

---

[28] The Court notes that this opinion does not conclude that in all circumstances a vehicle that is used by a person other than the debtor is not property of the estate. Nor does this opinion conclude that holding title to the vehicle is not evidence of ownership or evidence that the vehicle is property of the estate. The holding of this case is limited to its facts.

[29] The Court notes that its test of "personal use of the debtor" includes satisfaction of a debtor's "wants". Logically, then, acquisition of a vehicle to satisfy a debtor's affinity for her child might make the vehicle a 910 Vehicle, since the acquisition of the vehicle was intended to satisfy her feelings. It might be difficult, however, to determine whether the satisfaction of those feelings was significant and material. The Court will not address any of those issues since Daimler Chrysler has abandoned that issue based on the finding that the Debtor's son was the exclusive driver of the vehicle.

[30] Bankruptcy Code § 362(d).

Page 11

## 1. Section 506(c) does not authorize bifurcation of liens and cramdown of liens on property that is not property of the estate.

Debtor proposes to cram down Daimler Chrysler's claim such that Daimler Chrysler will be paid about $4,000 less than the amount due on the vehicle. For non-910 Vehicles, under §506(a) a vehicle lender's secured claim is bifurcated into a secured portion (equal to the value of the collateral at the time that the bankruptcy case was filed) and an unsecured portion (which is the remainder.) The secured portion is paid through the plan under authority of § 1325, and the unsecured portion is discharged under §§ 1328 and 524. Upon consummation of the plan, the vehicle is lien free. This statutory logic works when the collateral is entirely property of the estate.

But Bankruptcy Code § 506(a) applies only to a claim secured by "property in which the estate has an interest ..." Bankruptcy Code § 541, which defines "property of the estate", is very inclusive. However, Bankruptcy Code § 541(d) states that:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest... becomes property of the estate only to the extent of debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Therefore, § 506(a) does not apply to Debtor's son's equitable interest in the Neon. The Court is not aware of any authority for bifurcation of a lien secured by property in which the estate holds only a nominal interest and for payment of the reduced claim in such a way that would eliminate the lien as it applies to the equitable interest owned by a non-debtor.[31] Section 506(a) simply does not allow bifurcation of a lien to the extent that the lien attaches to the equitable interest that is not property of the estate.

That conclusion is supported by Bankruptcy Code § 524(e) which provides:

> [D]ischarge of a debt of the debtor does not affect the liability of any other entity on, <u>or the property of any other entity for</u>, such debt. (Emphasis added.)

Since Debtor's plan proposes to affect the liability of her son's property for Daimler Chrysler's claim, the plan violates Bankruptcy Code § 524(e).

Bankruptcy Code § 1325(a)(1) allows confirmation of a chapter 13 plan only if it complies with all provisions of Title 11. Since Debtor's plan proposes to cram down a secured creditor who holds a lien on property in which Debtor holds only a nominal interest, the Court concludes that the plan does not comply with the statutory provisions set forth above and cannot be confirmed.

---

[31] *See, In re Rodriguez*, 156 B.R. 659 (Bankr. E.D. Cal. 1993); *In re Maynard*, 264 B.R. 209 (B.A.P. 9th Cir. 2001).

### 2. This chapter 13 plan was not filed in good faith because it proposes to expose the Debtor and Creditors to unnecessary risks and expenses unrelated to the debtor/creditor relationship, unrelated to the requirements of debtor rehabilitation, and unrelated to property of the estate

Debtors in chapter 13 cases fail to complete their payments (and therefore fail to pay liens and fail to obtain chapter 13 discharges) in about 65% of their cases.[32] In almost 14 years on the bench, the undersigned judge has reviewed and has considered, literally, thousands of chapter 13 plans, and thousands of schedules I and J (debtor's schedules of income and expenses), a/k/a "budgets." The Court would not confirm a chapter 13 plan unless the debtor's income and budget were at least plausible. But regardless of what the debtors' schedules show, the fact is that debtors' financial prospects are fragile, at best. Problems occur during a chapter 13 case. Anticipated overtime pay does not materialize, one spouse loses a job, one or both spouses are laid off, *etc.* In addition, chapter 13 plan payments must come from "disposable income" which means that they are also dependent on accurate budgeting and control of a debtor's expenditures. Those budgets are often more aspirational than realistic. The anticipated costs of living are usually unrealistically low and usually fail to make any allowance for foreseeable extraordinary expenditures and contingencies such as home and appliance repairs, automobile repairs and replacement of tires and batteries, increases in gasoline prices, unusual medical bills, increases in property taxes and utility charges, *etc.* Variation in income and unanticipated expenses are almost certain to occur in each household over the 5 year period that a chapter 13 plan usually covers. This variation in income and this unrealistic budgeting lead to default in about 65% of the cases.

By including her son's car in this plan solely as an accommodation to him, and by proposing a plan that is feasible only if her son pays her $320 per month, Debtor has made her plan dependent not only on the vicissitudes of her own income and expenses but also on the vicissitudes of her son's income and expenses and the vagaries of his payments to her. Debtor <u>at least</u> doubles the risk that she will not be able to complete the payments required by the plan. The Court believes that the additional risk is unnecessary, unreasonable, and inappropriate in this case because it is simply not necessary to include the son's car in the plan to preserve property of the estate, to facilitate a financial reorganization, or to satisfy Debtor's legal obligations to her dependents. Debtor has articulated no justification for including her son's vehicle in the plan other than to act out her affection for her son. In a program in which 65% of all plans are not completed, unnecessary risk is unreasonable.

Chapter 13 provides a debtor with benefits at the expense of creditors if a debtor makes a sincere effort to formulate and to consummate a debt repayment plan. The debtor can (i) pay secured debt (and thereby retain a homestead, vehicles, and other collateral notwithstanding

---

[32] Jean Braucher, *An Empirical Study of Debtor Education in Bankruptcy: Impact of Chapter 13 Completion Not Shown*, 9 Am. Bankr. Inst. L. Rev. 557 (2001); Gordon Bermant, *Bankruptcy By the Numbers: What is 'Success' in Chapter 13? Why Should We Care?*, 23 Am. Bankr. Inst. J., 20 (September 2004), which can also be found online at the members only section of the ABI website at
<http://www.abiworld.org/AM/Template.cfm?section=September12&template=/MembersOnly.cfm&ContentID=38938>.
The experience in the Southern District of Texas has been worse than the 65% failure rate.

Page 13

defaults under the notes), (ii) pay non-dischargeable tax and other claims on extended and beneficial terms, and (iii) obtain a discharge from unsecured debt. The Bankruptcy Code codifies this "sincere effort" requirement in Bankruptcy Code §1325(a)(3); the Court may not confirm a chapter 13 plan unless the Court concludes that the plan was proposed in good faith.[33] After consideration of all the facts and circumstances in this case, the Court concludes that this plan was not proposed in good faith because of the combination of the following factors: (i) the plan will pay less than 100% of unsecured claims; any increase in risk of default in Debtor's payment reduces the creditors' prospects for recovery even more; (ii) increasing risk of default reduces Debtor's own prospects to keep her own Dodge Ram and to get a discharge of debt, (iii) the plan proposes to eliminate $4,000 of debt on Debtor's son's vehicle, which was acquired about 600 days before the bankruptcy petition was filed; Debtor could not achieve this lien reduction if the vehicle were for Debtor's own use, (iv) Debtor's son is an adult with his own family and there is no evidence that Debtor has any legal obligation to support her son or to provide him with a vehicle; there is no evidence that the son is disabled or otherwise dependent on Debtor, (v) providing a vehicle for her son is not necessary (or even helpful) to an effective reorganization, and (vi) Debtor's proposal to increase risk under these circumstances demonstrates a lack of a sincere commitment to formulate and to consummate a debt repayment plan.[34]

Therefore the Court denies confirmation of Debtor's chapter 13 plan because it does not satisfy the requirements of Bankruptcy Code § 1325(a)(3), that the plan be proposed in good faith.[35]

### C. Interest Rate

Bankruptcy Code § 1325 provides that the amount paid to a secured lender must be the present value of the claim, computed as of the effective date of the plan. Daimler Chrysler argues that the effective date of the plan is the plan confirmation date. Daimler Chrysler has cited no authority for this proposition, but the Court recognizes that there may have been valid argument for such conclusions prior to the effective date of BAPCPA.

Whatever validity that argument may have had prior to October 16, 2005, the Court finds that the Congressional intent, objectives, and consequences of the BAPCPA amendments are that the effective date of the plan will be the date that the case was filed.

The chapter 13 plan must be filed within 15 days after the case was filed.[36] Debtor must make postpetition payments pending plan confirmation.[37] Payments must be in equal monthly

---

[33] *See also* Bankruptcy Code § 1328(b).
[34] While this opinion holds that the combination of all these factors causes the Court to conclude that the plan was not filed in good faith, the Court need not address, and will not address, the relative priority and significance of these factors.
[35] The *Lewis* court reached a similar conclusion. It found that debtor could pay more funds to unsecured creditors if the non-debtor vehicle was excluded from the plan. In this case, the amount to be received from Debtor's son is slightly more than the payment on the vehicle. However, after deduction of trustee commissions and other costs of administration, the Court concludes that there is no material financial benefit to unsecured creditors from this additional $20 per month that Debtor will allegedly have.
[36] Fed. R. Bankr. P. 3015(b).
[37] Bankruptcy Code § 1326(a).

installments.[38] The Southern District of Texas has instituted rules and procedures that attempt to implement these provisions as fully as practical, in essence providing for payments under the bankruptcy scheme from the date that the case was filed. Thus the effective date of a chapter 13 plan is essentially the date of the order for relief in the case.

Therefore, the Court concludes that Debtor's plan provision for determining the interest rate by reference to the date that the case was filed is correct.

## IV. SUMMARY

Confirmation of Debtor's chapter 13 plan is denied. Debtor may file an amended plan if the plan is filed within 15 days. Debtor must give notice that the amended plan will be considered for confirmation on the next chapter 13 panel date in Victoria which is at least 20 days after the amended plan is filed and noticed to creditors.

SIGNED   November 14, 2006

*[signature: Wesley W. Steen]*

_____
WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE

---

[38] Bankruptcy Code § 1325(a)(5)(B)(iii)(I).